NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0684n.06
Filed: November 6, 2008

Case No. 07-5539

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ELIZABETH A. CLARK, et al., | ) | |
| | ) | |
| Appellants, | ) | ON APPEAL FROM THE |
| | ) | EASTERN DISTRICT OF |
| v. | ) | KENTUCKY |
| | ) | |
| KATHY ADAMS, et al., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

BEFORE:  BATCHELDER and DAUGHTREY, Circuit Judges; ZATKOFF, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.**  At issue in this appeal is whether the district court's judgment staying federal court proceedings pending the outcome of the appellants' state court proceedings is either a final appealable order or an interlocutory order from which we have jurisdiction to hear an immediate appeal.  Because it is neither, we have no jurisdiction to decide the present appeal and, therefore, DISMISS this appeal for lack of appellate jurisdiction.

**I.**

Plaintiff-appellant Elizabeth Clark[1] is the owner and director of Copper Care, Inc., a Kentucky corporation (formerly) licensed "to operate as a foster-care agency, approve foster homes,

---

[*]Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]There are actually four plaintiffs:  Ms. Clark, Copper Care Inc., Gladys Jenkins, and Donald Herrin.  Ms. Jenkins and Mr. Herrin are foster parents associated with Ms. Clark and Copper Care.  For ease of reference, and because Ms. Clark is the true plaintiff in this action, we refer to only Ms. Clark as the plaintiff-appellant throughout this opinion.

place children in approved locations, and oversee and assist in adoptions." Three Kentucky state agencies oversee these services — the Kentucky Cabinet for Health and Family Services, the Southeastern Kentucky Division of Regulated Childcare, and the Kentucky Office of the Inspector General — and the 24 defendants-appellees are all employees of these three agencies.

After an investigation culminated in an "emergency action" to suspend Copper Care's license, an administrative law judge (ALJ) upheld that action on May 24, 2005. On June 29, 2006 — following a hearing — that same ALJ upheld the agencies' recommendation to revoke Copper Care's license permanently. On October 6, 2006, the Kentucky Cabinet for Health and Family Services approved the ALJ's recommendation and permanently revoked Copper Care's license. Copper Care appealed to the Madison County (Kentucky) Circuit Court on November 1, 2006.

Meanwhile, on February 7, 2006 — while the state's administrative proceedings were still ongoing — Ms. Clark filed the present lawsuit in federal court, claiming that the defendants had discriminated against her because she is black. Ms. Clark asserted seven specific causes of action:

1.   *Unlawful Search*:   i.e., certain defendants "authorized, directly participated in[,] approved, or failed to curtail the unreasonable searches and seizures" of Ms. Clark's Copper Care offices, all of which was in violation of the Fourth Amendment.

2.   *Selective Enforcement*:   i.e., the defendants selectively enforced Kentucky Cabinet for Health and Family Services regulations, in violation of the Fourteenth Amendment, by "manufacturing or creating alleged violations of [health and safety] regulations that were not enforced when committed by non African-Americans and/or entities that ha[d] not filed complaints against Defendants."

3.   *Retaliation*:   i.e., the defendants retaliated against Ms. Clark, in violation of the First and Fourteenth Amendments, by "creating violations of regulations, conducting unreasonable searches and seizures, [and] suspending and enforcing an emergency suspension of [her] license." The retaliation was due to her (1) refusing to assist the

2

defendants in their attempt to obtain federal funds by fraud, by "placing facts on Copper Care's letterhead that did not occur," and (2) "successful[ly] litigati[ng] [against them] before [] the United States Department of Human Services, Office of Civil Rights."

4. *Fourteenth Amendment Violation*: i.e., "All Defendants' actions [as alleged in the previous paragraphs] are in violation of the Fourteenth Amendment to the United States Constitution."

5. *Discrimination*: i.e., the defendants interfered with Ms. Clark's "right to enforce contracts and to petition for redress of grievance" on the basis of her race, in violation of 42 U.S.C. § 1981.

6. *Conspiracy*: i.e., the defendants conspired to deny Ms. Clark "the equal protection of the laws . . . and . . . and of contractual rights" on the basis of her race, in violation of 42 U.S.C. § 1985(3).

7. *Neglect*: i.e., certain defendants, who "knew of the wrongs conspired to be done in violation of section 1981, 1983, and 1985," and who had "the power to prevent . . . the commission of" those wrongs, "neglected and refused to do so, in violation of 42 U.S.C. [§] 1986."

Based on these seven causes of action, Ms. Clark sought a broad declaratory judgment, four separate injunctions, and $10 million in damages, asking, among other things, that the court:

A. Declare the defendants' actions unconstitutional.

B. Enjoin defendants from "interfering with the license of Copper Care or otherwise suspending the operation of Copper Care."

C. Enjoin defendants from issuing noncompliance letters "without specifically stating the action that is in noncompliance and without stating specifically what action will bring Plaintiffs into compliance."

D. Enjoin the defendants "from taking further retaliatory measures against Plaintiffs in any form or fashion."

E. Enjoin the defendants "from proceeding further in the 'emergency license suspension' proceeding in State Court."

F. Award five million dollars in compensatory damages.

G. Award five million dollars in punitive damages.

H. Award costs and attorney's fees.

3

I.    Award "any and all other appropriate relief."

The defendants moved to dismiss the complaint, arguing Eleventh Amendment immunity from damages claims for official-capacity conduct, expiration of the statute of limitations for many of the claims, and *Younger* abstention[2] with regard to the ongoing license-suspension proceeding. The defendants also sought dismissal under Fed. R. Civ. P. 12(b)(6), but the district court rejected that argument. Similarly, the defendants argued that they are entitled to qualified immunity, but the district court deferred ruling on that argument and it is not presently before us.

On March 29, 2007, the district court granted the defendants' motion in part — dismissing some of the claims and holding other claims in abeyance. The court dismissed all damages claims against the defendants in their official capacities, on the basis of Eleventh Amendment immunity. The court also dismissed all claims based on events alleged to have occurred prior to February 7, 2005, holding that the statute of limitations had expired on those claims.[3] After these dismissals, the court was left with Ms. Clark's requests for: (1) declaratory judgment; (2) the four injunctions; (3) damages from the defendants in their individual capacities for events alleged to have occurred after February 7, 2005; and (4) costs and attorney fees.

The court then embarked on a somewhat lengthy discussion of *Younger* abstention, which concluded with the following disposition:

> Having determined that this case is an appropriate one for *Younger* abstention, this Court then has the discretion to dismiss the case without prejudice or hold the case

---

[2]"*Younger abstention*:   A federal court's decision not to interfere with an ongoing state criminal [or administrative] proceeding by issuing an injunction or granting declaratory relief, unless the prosecution has been brought in bad faith or merely as harassment.  Also termed equitable-restraint doctrine."  Black's Law Dictionary (8th ed. 2004), abstention (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

[3]The court identified three surviving events:  "(1) interview of foster children, (2) attempted access to Copper Care records in April 2005, and (3) revocation of Copper Care's license following a suspension order."

4

in abeyance pending the outcome of the state proceedings. Because the statute of limitations has now run on Plaintiffs' claims regarding licensure, this Court will stay these proceedings rather than dismiss them without prejudice. If there are any claims remaining following a final decision in the state courts, Plaintiffs will be able to raise them at that time based on the state court record.

It is clear that two of the requested remedies (set out above as "B" and "E") could not survive the state court proceedings, but it is equally clear that the others might, particularly the damages claims against the defendants in their individual capacities (and their corresponding qualified immunity arguments). So, the district court held that after the state court had reached a final decision on the administrative license revocation, it would consider — in light of the state court record — Ms. Clark's four remaining requests, for: (1) declaratory judgment; (2) two injunctions; (3) damages from the individual defendants for the post-February 7, 2005 allegations; and (4) costs and attorney fees.

Ms. Clark appealed and the defendants moved this court to dismiss, arguing that the district court's order was not final and, hence, this court had no appellate jurisdiction. A motions panel denied the motion, finding that "[t]he abstention-based stay issued by the district court puts the plaintiffs 'effectively out of court,' and the order is appealable as a final order." *Clark v. Adams*, No. 07-5539, Order (6th Cir. Sept. 14, 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983), *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962), and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996)). But, the present (merits) panel reconsidered the issue of our appellate jurisdiction and, at oral argument, we instructed the parties to submit additional briefing on this issue. Both sides submitted letter briefs.

## II.

"The courts of appeals . . . shall have jurisdiction of appeals from all *final* decisions of the

5

district courts of the United States." 28 U.S.C. § 1291 (emphasis added). "A final decision is one which ends the litigation on the merits and leaves the court nothing to do but execute the judgment. . . . Conversely, a stay of proceedings is generally considered interlocutory." *M&C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1036 (6th Cir. 1998). Moreover, "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "Otherwise, any order . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id*.

In the present case, the district court clearly did *not* "end[] the litigation on the merits and leave[] . . . nothing to do but execute the judgment," *M&C Corp.*, 143 F.3d at 1036, but rather, it stayed or continued its proceedings until the state had entered a final decision on Ms. Clark's administrative appeal of her license-revocation. The district court specified:

> [T]his Court will stay these proceedings rather than dismiss them without prejudice. If there are any claims remaining following a final decision in the state courts, Plaintiffs will be able to raise them at that time based on the state court record.

Furthermore:

> Defendants' motion to abstain from further proceedings in this matter pursuant to *Younger v. Harris* is GRANTED. These proceedings are STAYED and will be held in abeyance pending the outcome of Plaintiffs' state court proceedings regarding licensure[.]

Such a stay "is generally considered interlocutory." *See M&C Corp.*, 143 F.3d at 1036.

In the "Statement of the Basis for Subject Matter Jurisdiction" portion of her appellate brief, Ms. Clark asserted: "Pursuant to Title 28 U.S.C. § 1291, this Court has jurisdiction to hear this appeal *from a final order* of the District Court granting Defendants' Motion *to Stay Proceedings*."

6

Apt.'s Br. at 1 (emphasis added). As Ms. Clark did not view this as an interlocutory appeal, she did not offer any theory that would provide jurisdiction for us to hear it as an interlocutory appeal.

While this appeal was pending before this court, the defendant-appellees moved to dismiss it for lack of appellate jurisdiction, arguing that "[t]his is an interlocutory appeal that has not been certified pursuant to 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b)." In her response to that motion, Ms. Clark insisted that the order was indeed "final" because "the district court ha[d] nothing else to consider until the completion of the state proceedings." Alternatively, she argued that this was a proper interlocutory appeal because it presented "a controlling question of law," that being a "determination that [she] was the victim of racial discrimination." Ms. Clark theorized that it was indeed a question of law, despite appearances to the contrary, inasmuch as "the particular facts in this case have not been previously addressed by the Sixth Circuit." In their reply motion, the defendants cited *Summers v. Leis*, 368 F.3d 881, 889 (6th Cir. 2004), in which we explained:

> The district court's failure to dismiss the entire action pursuant to *Younger* does not qualify as a final decision under 28 U.S.C. § 1291, nor does it fit within the collateral order exception to that statute. Additionally, the district court's decision does not qualify as an interlocutory order as defined in 28 U.S.C. § 1292.

The motions panel denied the defendant-appellees' motion, but in so doing did not apply Ms. Clark's reasoning. Instead, the motions panel relied on *Moses H. Cone*, 460 U.S. at 10, *Idlewild*, 370 U.S. at 715 n.2, and *Quackenbush*, 517 U.S. at 713, for the proposition that "an order that stays a federal action in deference to pending state court proceedings is appealable if the plaintiff is 'effectively out of court.'" The motions panel then concluded that "[t]he abstention-based stay issued by the district court puts the plaintiffs 'effectively out of court,' and the order is appealable as a final order." That decision, however, is clearly incorrect, both legally and factually.

7

Legally, the motion panel's conclusion is incorrect because *Moses H. Cone*, *Idlewild*, and *Quackenbush* all involve abstention-as-deference, whereas the present case involves abstention-as-continuance. *See*, *e.g.*, *Growe v. Emison*, 507 U.S. 25, 32 n.1 (1993) (explaining that courts should use the word "deference," rather than "abstention," when they actually mean deference). Thus, when considered in the present circumstances, their reasoning and holdings are inapposite.

In *Moses H. Cone*, 460 U.S. at 8, the plaintiffs — invoking diversity jurisdiction — filed suit in federal court to compel arbitration of a contract dispute, but the district court stayed the action under *Colorado River* abstention,[4] pending the completion of a state-court action in which the defendants had already filed for a declaratory judgment on that same contract dispute. The Supreme Court, relying on *Idlewild*, 370 U.S. at 715, held that the abstention-based stay order was appealable under § 1291 because it put the litigants "effectively out of court." The Court explained:

> A district court stay pursuant to *Pullman* abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds. Here, by contrast [i.e., under *Colorado River* abstention and the circumstances of this case], the District Court predicated its stay order on its conclusion that the federal and state actions involved the identical issue of arbitrability of the claims of Mercury Construction Corp. against the Moses H. Cone Memorial Hospital. That issue of arbitrability was the only substantive issue present in the federal suit. Hence, a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would be *res judicata*. Thus, here, even more surely than in *Idlewild*, Mercury was effectively out of court. Hence, as the Court of Appeals held, this stay order amounts to a dismissal of the suit.

*Moses H. Cone*, 460 U.S. at 10 (footnotes, citations, and quotation marks omitted). To recap: the stay was final (and appealable) because "this stay amounts to a dismissal of the suit," because "the

---

[4]"*Colorado River abstention*. A federal court's decision to abstain while relevant and parallel state-court proceedings are underway." Black's Law Dictionary (8th ed. 2004), abstention (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

8

state court's judgment on the [only substantive issue in the federal suit] would be *res judicata*." That is surely not the situation in the present case, in which there are numerous issues and few, if any, will be subject to *res judicata* from the state court's decision on administrative revocation. The *Moses H. Cone* Court recognized the uniqueness of its situation and reiterated the premise of *Idlewild*:

> Of course . . . *Idlewild* does not disturb the usual rule that a stay is not ordinarily a final decision for purposes of § 1291, since most stays do not put the plaintiff 'effectively out of court.' *Idlewild*'s reasoning is limited to cases where (under *Colorado River*, abstention, or a closely similar doctrine) the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum.

*Id*. at 10 n.11 (citation omitted). This is the part of *Moses H. Cone* (and *Idlewild*) that is pertinent to the particular circumstances of the present case, and the motions-panel decision is contrary to it.

In *Quackenbush*, 517 U.S. at 709, the California State Insurance Commissioner sued Allstate Insurance Company in state court, seeking contract and tort damages. Allstate removed the action to federal court on diversity grounds and moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. The Commissioner sought remand to state court on the basis of *Burford* abstention,[5] arguing that resolution of the case might interfere with California's regulation of its insurance industry. "The District Court concluded this case was an appropriate one for the exercise of *Burford* abstention [and] did not stay its hand pending the California courts' resolution of the setoff issue, but instead remanded the entire case to state court. The District Court entered this remand order without ruling on Allstate's motion to compel arbitration." *Id*. at 710.

On appeal, the Supreme Court relied on *Moses H. Cone* and *Idlewild* to conclude that the abstention order was final and appealable. *Id*. at 713. The *Quackenbush* Court explained that the

---

[5]"*Burford abstention*: A federal court's refusal to review a state court's decision in cases involving a complex regulatory scheme and sensitive areas of state concern." Black's Law Dictionary (8th ed. 2004), abstention (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).

district court's decision was "in all relevant respects indistinguishable from the stay order we found to be appealable in *Moses H. Cone*," reasoning:

> No less than an order staying a federal court action pending adjudication of the dispute in state court, it puts the litigants in this case 'effectively out of court,' and its effect is precisely to surrender jurisdiction of a federal suit to a state court. Indeed, the remand order is clearly more 'final' than a stay order in this sense. When a district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket.

*Id*. at 714 (citations and certain quotation marks omitted). To recap: remand puts the litigants out of federal court entirely. That is surely not the situation in the present case, in which there are clearly issues that remain to be decided by the federal court after resolution of the state court case.

So, the motions-panel decision is legally insupportable, inasmuch as its cited authorities do not support its proposition under these circumstances. Furthermore, it is factually incorrect, as the stay issued by the district court does *not* put the plaintiffs "effectively out of court." More to the point, the district court's stay order is not final and we have no jurisdiction to review it. The only question remaining is the continuing effect of the (incorrect) motions-panel decision.

The law in this circuit is clear that "that the law of the case doctrine does not foreclose reconsideration of subject-matter jurisdiction." *Amen v. Dearborn*, 718 F.2d 789, 794 (6th Cir. 1983); *Edwards v. UPS, Inc.*, 99 F. App'x 658, 660 (6th Cir. 2004). Indeed, every circuit to consider this issue has ruled the same way. *See*, *e.g.*, *Council Tree Commc'ns, Inc. v. F.C.C.*, 503 F.3d 284, 292 (3d Cir. 2007) ("the law of the case doctrine does not bar a merits panel from revisiting a motions panel's assumption of subject matter jurisdiction"); *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1176 n. 3 (10th Cir. 2005); *United States v. Arevalo*, 408 F.3d 1233, 1237 (9th Cir. 2005) ("a merits panel should reconsider jurisdictional issues even if previously

decided by a motions panel"); *Sammie Bonner Constr. Co. v. W. Star Trucks Sales, Inc.*, 330 F.3d 1308, 1311 (11th Cir. 2003); *CNF Constr., Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 397 n.1 (4th Cir. 1995) (citing cases for the proposition that "the doctrine of 'law of the case' does not prevent this Court from revisiting a prior ruling of a motion panel on the Court's jurisdiction"); *Ass'n of Inv. Brokers v. SEC*, 676 F.2d 857, 863 (D.C. Cir. 1982); *Green v. Dept. of Comm.*, 618 F.2d 836, 839 (D.C. Cir. 1980) ("The earlier action of the motions panel does not free this court from the independent duty to decide whether we have jurisdiction.").

Thus, we are not bound by the motions panel's determination and, based on an independent assessment of jurisdiction, must conclude that the order from which Ms. Clark appealed is not final and we have no jurisdiction to hear this appeal.

### III.

For the foregoing reasons, we **DISMISS** this appeal for lack of jurisdiction.