[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11120
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cr-14054-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY JOSEPH SAFFIOTI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 25, 2019)

Before BRANCH, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Anthony Saffioti appeals his conviction for knowingly making a materially false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 2.  He makes three arguments on appeal: that the district court abused its discretion when it denied (1) his motions for a continuance and (2) his motion for substitution of counsel.  He also argues that (3) there was not sufficient evidence for a reasonable jury to have found him guilty of the crime charged.  We address these arguments in turn and find each of them without merit.

## I.

First, we review the denial of a motion for a continuance of a trial for an abuse of discretion.  United States v. Graham, 643 F.3d 885, 893 (11th Cir. 2011).  No mechanical tests exist to decide when a denial of a continuance is so arbitrary as to violate due process.  United States v. Jeri, 869 F.3d 1247, 1257 (11th Cir. 2017).  Rather, the determination turns on the circumstances of each case, particularly the reasons presented to the district court at the time that the request is denied.  United States v. Edouard, 485 F.3d 1324, 1350 (11th Cir. 2007).  We consider the time available for preparation, the likelihood of prejudice, the defendant's role in shortening the effective preparation time, the degree of complexity of the case, the availability of discovery from the government, and the adequacy of the defense provided.  United States v. Garmany, 762 F.2d 929, 936 (11th Cir. 1985).

2

The denial of a continuance requested to permit a defendant additional preparation for trial must be upheld unless the defendant can show specific, substantial prejudice.  United States v. Saget, 991 F.2d 702, 708 (11th Cir. 1993).  To make such a showing, the party must identify relevant, noncumulative evidence that it would have presented if the district court had granted the continuance.  Id.

We conclude that the district court did not abuse its discretion when it denied either Saffioti's motions for a continuance.  Our review of the record persuades us that this was a relatively simple case that did not require a continuance—the linear chain of events was not complex, Saffioti himself was directly familiar with the predicate events giving rise to the charges, and he personally knew the testifying witnesses.  Moreover, Saffioti points to no specific prejudice that he suffered, nor to any "relevant, noncumulative evidence" that he would have presented had a continuance been granted.  See Saget, 991 F.2d at 708.  And contrary to Saffioti's assertions to the district court, which he raises again to us now, all of the evidence proffered by the government at trial was timely disclosed to him, so he cannot credibly claim to have been unduly surprised by any untimely made disclosures.[1]

---

[1] We also strenuously disagree with Saffioti's characterization that his lawyer's statement to this effect before the district court "undermined" his case and serves as proof of the irreconcilable conflict that he experienced with his court-appointed counsel.  As this court has noted repeatedly, a lawyer "always has a duty of candor to the tribunal."  E.g., Federated Mut. Ins. Co. v. McKinnon Motors, 329 F.3d 805, 809 (11th Cir. 2003) (quoting Burns v. Windsor Ins., Co., 31 F.3d 1092, 1095 (11th Cir. 1994)).  To the extent that Saffioti's attorney believed that Saffioti

3

With regard to Saffioti's second motion, which occurred the morning that the trial was set to begin, we find it significant that he requested the continuance so close to the beginning of trial. While it is of course true that "a scheduled trial date should never become such an overarching end that it results in the erosion of the defendant's right to a fair trial," United States v. Uptain, 531 F.2d 1281, 1291 (5th Cir. 1976), we are generally "wary of countenancing eleventh-hour requests for additional time." See United States v. Garmany, 762 F.2d 929, 937 (11th Cir. 1985). Though time is a component part of, not a dispositive factor in, the "circumstances presented" in evaluating a request for a continuance, see id. at 936, we are quite skeptical that the district court's failure to grant such a last-minute request constitutes abuse of discretion here.

Further, with regard to a district court's obligation to hold a hearing to specifically consider the continuance, due process guarantees generally require appropriate hearings based on the nature and circumstances of the case. United States v. Raddatz, 447 U.S. 667, 677 (1980). But there is no one-size-fits-all requirement that a district court hold a formal hearing before ruling on a motion for a continuance. Bowe, 221 F.3d at 1189. As we held in Bowe, "hearings are unnecessary when there is no dispute about the facts underlying the request for a

---

was making a false representation to the court, he was duty-bound to correct it. See Rule 3.3: Candor Toward the Tribunal, Am. Bar Ass'n (2016).

4

continuance." Id.  Here, we cannot conclude that the district court's failure to conduct a hearing constituted abuse of discretion.  We struggle to see how a hearing, specially scheduled for the purpose of considering Saffioti's motions for a continuance, would have altered the outcome.  The argument in favor of granting either motion was relatively weak and would not have been strengthened at a hearing.

Accordingly, because we conclude that the district court did not abuse its discretion in denying Saffioti's two motions for continuance, we affirm as to this ground.

## II.

Second, Saffioti argues that the district court erred by denying his motion to substitute new counsel, which was nested in his second request for a continuance. We review here for abuse of discretion.  United States v. Calderon, 127 F.3d 1314, 1343 (11th Cir. 1997).  The Sixth Amendment guarantees a defendant's right to counsel, but it does not grant the unqualified right to counsel of choice.  United States v. Garey, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc).  Indigent criminal defendants ordinarily must either accept appointed counsel or represent themselves.  Id. at 1263–64.  However, upon a showing of good cause, an indigent defendant may receive substitute appointed counsel.  Id. at 1263.  Good cause is limited to fundamental problems, including conflicts of interest, complete

5

breakdowns in communication, and irreconcilable conflicts that lead to an unfair verdict.  Id.  A general loss of confidence or trust in counsel does not amount to good cause.  Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985).  Implicit in the right to assistance of counsel is the notion of adequate time for counsel to prepare the defense.  Jeri, 869 F.3d at 1257.  Therefore, the denial of a continuance in some circumstances may hinder the right to counsel by rendering it an empty formality and depriving the defendant of an opportunity to adequately prepare his defense.  Id.

When considering a district court's ruling on a motion for substitute court-appointed counsel, we consider the following factors: (1) its timeliness; (2) the adequacy of the court's inquiry into its merits; and (3) "whether the conflict was so great that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense."  Calderon, 127 F.3d at 1343.  In determining whether a denial of a continuance impinged on a defendant's choice of counsel, we consider the length of delay, whether other continuances have been granted, the inconvenience to all involved, the legitimacy of the reason for a continuance, and any unique factors.  United States v. Bowe, 221 F.3d 1183, 1190 (11th Cir. 2000).  Even if the district court abused its discretion, the defendant must show prejudice from defense counsel's continued representation.  Calderon, 127 F.3d at 1343.

6

Here, we conclude that the district court did not abuse its discretion by denying Saffioti's motion to substitute new counsel. We believe that the eleventh-hour nature of the request, along with the apparent lack of actual conflict, weigh in favor of affirming on this ground. Even granting Saffioti the benefit of every possible inference, the evidence is clear that the disagreements between Saffioti and his counsel did not rise to the level of "a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." Garey, 540 F.3d 1253, 1263 (11th Cir. 2008) (quoting United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973)). Here, we find Saffioti's own words helpful. Though he asserted that he and his attorney "ha[d] a lot of conflict" and that he didn't "feel comfortable with him," he conceded that "he is probably a wonderful lawyer," "is a very smart guy," and that his disagreements were really just a matter of not seeing "eye and eye with him." Saffioti alleges no conflict of interest, no complete breakdown of communication, nor any irreconcilable conflict. Moreover, he fails to point to how the outcome—a guilty verdict in a straightforward case with strong evidence against him—would have been any different with a different attorney.

### III.

Third, Saffioti argues that the evidence was insufficient to support a guilty verdict. When a defendant has challenged the sufficiency of the evidence by an

appropriate motion for judgment of acquittal, we review de novo whether there was sufficient evidence to support a conviction.  United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009).  In reviewing the sufficiency of the evidence, we view the record in the light most favorable to the government, resolving all reasonable inferences in favor of the verdict.  Id.  We assume that the jury made all credibility choices in support of the verdict.  Id. at 1285.

The evidence will be sufficient if a reasonable trier of fact could find that the evidence established the defendant's guilt beyond a reasonable doubt.  Id. at 1284–85.  The issue is whether a jury reasonably could have found the defendant guilty—not whether it could have acquitted him.  Accordingly, it is inadequate for a defendant to put forth a reasonable hypothesis of innocence.  Id. at 1285.  This test for sufficiency is the same, regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, reasonable inferences must support the conviction.  United States v. Martin, 803 F.3d 581, 587 (11th Cir. 2015).  Credibility questions are the sole province of the jury.  United States v. Schmitz, 634 F.3d 1247, 1269 (11th Cir. 2011).

To support a conviction under 18 U.S.C. § 922(a)(6), the government must show that (1) the defendant knowingly made (2) a false written statement in connection with the purchase of a firearm (3) intended or likely to deceive a licensed firearms dealer and (4) the false statement was material to the lawfulness

of the purchase.  United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003).

"Straw purchases" occur when a prohibited possessor uses a lawful straw-man

purchaser to buy a firearm for him, which equally misrepresents the identity of the

actual purchaser as using a false name.  Id. at 1037.

To prove aiding and abetting under 18 U.S.C. § 2, the government must

prove that: (1) someone committed the substantive offense; (2) the defendant

contributed to and furthered the offense; and (3) "the defendant intended to aid in

its commission."  United States v. Camacho, 233 F.3d 1308, 1317 (11th Cir. 2000).

Someone who aids and abets or willfully causes the commission of an offense is

punishable as a principal.  18 U.S.C. § 2.

Here, we have no difficulty in concluding that there was sufficient evidence

for a reasonable jury to convict Saffioti under an aiding and abetting theory.

Though Saffioti denies knowledge of the specific misrepresentation on the ATF

form, Esch testified at trial that Saffioti was "in charge of the firearms transaction

for the purchase of the firearm," "encouraged [her] to fill out that form," and

"encouraged [her] to claim that [she was] the actual transferee and buyer of the

firearm."  The uncontroverted security camera footage, which recorded the entire

transaction, confirms Esch's testimony.  The footage shows Saffioti picking out a

firearm, providing the money for the transaction, and standing next to Esch and

speaking with her the entire time that she was filling out the 4473 form.  Even if

9

Saffioti was not familiar with the specific language of the form at the time—which is plausible—he nonetheless encouraged Esch to make a material misrepresentation on it. We cannot conclude that the jury in this case was unreasonable in arriving at the conclusion that it did, and in making any implicit credibility determinations in so doing. The evidence presented was clearly sufficient to support the verdict. We affirm as to this issue as well.

**AFFIRMED.**